Roland L. **HAGEN** and Joanne C. **Hagen, Plaintiffs and Appellants,**

v.

**CITY OF SIOUX FALLS, a municipal corporation, Defendant and Appellee.**

**No. 17007.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 22, 1990.

Decided Dec. 19, 1990.

---

Acie W. Matthews of Pruitt, Matthews & Muilenburg Sioux Falls, for plaintiffs and appellants.

William Fuller of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendant and appellee.

WUEST, Justice.

Roland L. Hagen and Joanne C. Hagen, (Hagens) husband and wife, appeal an order of summary judgment in favor of the City of Sioux Falls (City) in an action for negligent inspection and enforcement of the City Building Code. We affirm.

In 1974, the Hagens purchased their present residence located in Sioux Falls, South Dakota. In 1978, the Hagens hired Daryl Monen to construct a garage for their home. A building permit was secured for the garage project on October 26, 1978. The garage was constructed and passed final inspection on November 14, 1978. At the time of final inspection, the garage was either completed or substantially completed. Following completion of the garage, the Hagens hired the same contractor, Daryl Monen, to construct an addition to their residence. A building permit was secured on April 16, 1979, and the addition passed final inspection on August 10, 1979. The addition was also completed or substantial-ly completed at the time of its final inspection. Neither Hagen was present for the final inspection of either the garage or the addition.

The Hagens claim the City, through the action or omission of its employees, was negligent in failing to properly inspect the garage and addition construction. The Hagens contend that the studs in the garage were not built sixteen inches on center and that both structures were not built at least six inches above grade as required by the City Building Code. As a result, water runs into the garage and the addition causing the wood foundation and supports of each structure to deteriorate and rot. The Hagens claim the failure of the contractor to construct both the garage and the addition six inches above grade could have been easily seen upon completion of the construction and at the time of the inspections. The Hagens first became aware of their water problems in approximately 1987 when they noticed rotting siding around the foundation of the addition and the garage.

In early 1988, the Hagens spoke with officials of the City concerning the damages to their property and were advised to pursue a claim with the City's insurance division. On June 10, 1988, the Hagens filed such a claim. Almost one year later, on June 6, 1989, the Hagens gave formal written notice to the City and the Attorney General that the Hagens intended to seek recovery of damages for the property damage sustained by the garage and addition. This suit followed.

■ The trial court granted summary judgment in favor of the City and the Hagens appealed. We resolve this appeal on the issue of whether the City owes a duty to the Hagens upon which a cause of action for damages may be premised.[1]

The City adopted the 1970 Edition of the Uniform Building Code, and it was in effect at the time the Hagens' construction work was being done. Section 102 of the Code provides:

---

1. In view of our decision, we do not resolve a second issue raised on appeal; namely, whether the Hagens' cause of action is time barred by reason of SDCL 3–21–2 and 3–21–3.

The purpose of this Code is to provide minimum standards to safeguard life or limb, health, property, and public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings and structures within the City and certain equipment specifically regulated herein.

The Hagens contend section 102 establishes a duty of care to the Hagens, the breach of which supports a cause of action for resultant damages. The City asserts that section 102 does not create a duty owed to the Hagens as individuals, but rather creates a general duty to the entire public which cannot form the basis of an action in negligence against the City.

The existence of a duty is a threshold issue in any case of tort liability. Whether a duty exists is a matter of law for the court to determine. *Gilbert v. United National Bank,* 436 N.W.2d 23, 27 (S.D.1989). The question whether to impose liability upon a municipality for the damages caused by its agent's negligent inspection or negligent failure to inspect has given rise to two distinct lines of decision. While reaching contrary conclusions, the jurisdictions which have addressed this issue focus upon the nature of the duty of the inspector.

Exemplary of those jurisdictions which recognize an actionable legal duty, and thus impose liability, is *Coffey v. City of Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132 (1976): There, the Wisconsin Supreme Court stated:

A building inspector must be held to have foreseen that his alleged negligence in performing the required inspection might have foreseeably resulted in harm to someone. Furthermore, under the rule of law stated in Restatement, 2 *Torts* 2d, p. 142, sec. 324A, . . ., the building inspector, once he did undertake to inspect the building had a duty to exercise reasonable care in so doing. That duty flowed to the plaintiffs herein.

The "public duty"—"special duty" distinction [is] . . . the type of artificial distinction between "proprietary" and "gov-ernmental" functions which this court sought to dispose of [when it abrogated sovereign immunity]. Any duty owed to the public generally is a duty owed to individual members of the public.

*Coffey,* 74 Wis.2d at 540, 247 N.W.2d at 139. *See also Adams v. State,* 555 P.2d 235 (Alaska 1976); *Wilson v. Nepstad,* 282 N.W.2d 664 (Iowa 1979).

*Hoffert v. Owatonna Inn Towne Motel, Inc.,* 293 Minn. 220, 199 N.W.2d 158 (1972) exemplifies the reasoning employed in jurisdictions finding no actionable duty. The Minnesota Supreme Court reasoned:

The purpose of a building code is to protect the public. This is well stated in 7 McQuillin, Municipal Corporations (3 ed.) § 24.507, p. 523:

" * * * The enactment and enforcement of building codes and ordinances constitute a governmental function. The primary purpose of such codes and ordinances is to secure to the municipality as a whole the benefits of a well-ordered municipal government, or, as sometimes expressed, to protect the health and secure the safety of occupants of buildings, and not to protect the personal or property interests of individuals."

Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established. As such, they are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes. The charge for building permits is to offset expenses incurred by the city in promoting this public interest and is in no way an insurance premium which makes the city liable for each item of defective construction in the premises.

*Hoffert,* 199 N.W.2d at 160. *See also Cracraft v. City of St. Louis Park,* 279 N.W.2d 801 (Minn.1979); *Lakeside Condominium "C" Association v. Frediani Developers, Inc.,* 135 Ill.App.3d 972, 90 Ill.

Dec. 686, 482 N.E.2d 665 (1st Dist.1985); *Rich v. City of Mobile,* 410 So.2d 385 (Ala. 1982); *Duran v. City of Tucson,* 20 Ariz. App. 22, 509 P.2d 1059 (1973); *Grogan v. Commonwealth,* 577 S.W.2d 4 (Ky.1979), *cert. denied,* 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979); *Dinsky v. Town of Framingham,* 386 Mass. 801, 438 N.E.2d 51 (1982).

■ The case of *Halvorson v. Dahl,* 89 Wash.2d 673, 574 P.2d 1190 (1978), cited by the Hagens, is particularly noteworthy. *Halvorson* involved the alleged failure of city officials to enforce the municipal building, housing, and safety codes in connection with a hotel fire. The court acknowledged:

> The traditional rule is that municipal ordinances impose a duty upon municipal officials which is owed to the *public* as a *whole,* so that a duty enforceable in tort is not owed to any particular *individual.*

*Id.* at 676, 574 P.2d at 1192. However,

> Liability can be founded upon a municipal code if that code by its terms evidences a clear intent to identify and protect a particular and circumscribed class of persons.

*Id.* The court found a provision in the municipal housing code to identify and protect a particular and circumscribed class of persons, i.e. occupants of buildings. Thus, the court held the housing code imposed upon the municipality a duty of care that would support a cause of action for damages resulting from negligent enforcement of the code.

In contradistinction, the court cited the municipal *building* code as exemplary of those codes enacted merely for public safety or the general welfare. The *building* code provision at issue in *Halvorson* is identical to the *building* code provision at issue here. The *Halvorson* court held that under the traditional rule such codes impose upon the municipality a duty to the public, not an actionable duty to any individual member of the public. *See generally* Annotation, 38 A.L.R. 4th 1194 (1985) which notes that a majority of jurisdictions apply the public duty/special duty analysis.

■ It is a basic principle of tort law that public duties created by statute cannot be the basis for a negligence action even as against private tortfeasors. Restatement (Second) of Torts § 288 (1965) provides:

> [A] legislative enactment ... whose purpose is found to be exclusively (a) to protect the interests of the state or any subdivision of it as such, or (b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, ...

does not create a standard of conduct to be used to impose tort liability. Comments on Clause (a) and (b) illustrate further:

> Many legislative enactments and regulations are intended only for the protection of the interests of the community as such, or of the public at large, rather than for the protection of any individual or class of persons. Such provisions create an obligation only to the state, or to some subdivision of the state, such as a municipal corporation. The standard of conduct required by such legislation or regulation will therefore not be adopted by the court as the standard of a reasonable [person] in a negligence action brought by the individual.
>
> . . . .
>
> Other legislative enactments and regulations are intended only for the purpose of securing to individuals the enjoyment of rights and privileges to which they are entitled as members of the public, rather than for the purpose of protecting any individual from harm. Thus a statute may be intended only to secure the public right of unobstructed passage on the public highway, or freedom from excessive noise or immoral conduct in the community. Under some circumstances, where an individual has been interfered with in his exercise of such a public right, and as a result has suffered special harm, distinct from that suffered by the rest of the community, he may be entitled to maintain a tort action for the violation.... In the ordinary case, however, harm suffered by such an individual is not within the purpose of the provision, and the statute or regulation will

not be taken to lay down a standard of conduct with respect to such harm.

Restatement (Second) of Torts § 288, comment on clause (a), (b) (1965). The public duty/special duty distinction is therefore a well-established tort principle applicable to actions against individuals as well as governments.

We agree with the analysis of the *Halvorson* court and find persuasive the rationale stated in *Hoffert.* The broad, general language of the City's Building Code section 102 evidences an intent on the part of the City to create only a general duty to the public as a community, rather than an obligation to a specific class of individual members of the public. Under general tort principles, then, section 102 does not create a duty of care which will support the Hagens' negligence claim and their action must fail.

We affirm.

All the Justices concur.