#25407-rev & rem-JKK

**2010 SD 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE APPLICATION
OF B.Y. DEVELOPMENT, INC., a
South Dakota Corporation, FOR
PROJECT APPROVAL DEADWOOD
HISTORIC PRESERVATION OFFICE
NO. 07050

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE RANDALL L. MACY
Judge

* * * *

ROGER A. TELLINGHUISEN
BRAD P. GORDON
ERIC J. STRAWN of
Tellinghuisen & Gordon, P.C.              Attorneys for appellee
Spearfish, South Dakota                  B.Y. Development.

JASON A. CAMPBELL
City of Deadwood                          Attorney for appellant
Deadwood, South Dakota                   City of Deadwood.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 26, 2010

OPINION FILED **07/07/10**

#25407

KONENKAMP, Justice

[¶1.]	A business sought approval from the local historic preservation commission to expand its building in a historic landmark district. In denying the application, the commission relied on city ordinances to conclude, in the words of the enabling statute, that the project would "encroach upon, damage, or destroy" certain historic properties. In reversing the commission's ruling, the circuit court interpreted the enabling statute without reference to the city ordinances the statute empowered the city to enact. We reverse and remand for the circuit court to examine both the statute and the ordinances to determine whether the commission properly denied the application.

## Background

[¶2.]	B.Y. Development sought approval from the City of Deadwood Historic Preservation Commission to expand Cadillac Jack's Gaming Resort located in the Deadwood National Historic Landmark District. On November 1, 2007, after three hearings, the Commission denied B.Y.'s application. The Commission found that B.Y.'s project would encroach upon, damage, or destroy historic properties in the National Register of Historic Places and the State Register of Historic Places. *See* SDCL 1-19B-62; Deadwood City Ordinance (DCO) 17.68.020(11); DCO 17.68.050. Further, the Commission denied the permit for noncompliance with 36 CFR 67. *See* SDCL 1-19B-62.

[¶3.]	B.Y. appealed the denial to the circuit court. Following a hearing, the court issued a memorandum decision remanding the case to the Commission. The Commission was ordered to identify the specific historic properties encroached

upon, damaged, or destroyed by B.Y.'s project. After two additional public hearings, the Commission again denied B.Y.'s application. Using, among other things, the criteria in DCO 17.68.050, the Commission identified the Sinclair Station, Auer Garage, Auer House, and Ferris House as specific protected properties affected.[1]

[¶4.] B.Y. again appealed the Commission's decision to the circuit court. At the hearing, the City argued that in deciding whether an undertaking encroaches upon, damages, or destroys a protected historic property, the Commission must consider the guidelines adopted under DCO 17.68.050. In particular, counsel for the City argued that the Commission "went through [the criteria of DCO 17.68.050] and explained that very carefully and in great detail, how they believed in that fashion, with those criteria, how this project would either encroach upon, damage, or destroy specific historic properties that they listed." The court asked counsel for

---

1. The Commission found that "[t]he proposed new construction encroaches upon the Ferris House, Auer House, Auer Garage and Sinclair Station . . . due to the size and scale of the project, by completely overshadowing them. . . . Thus, this size and scale is inconsistent with the historic character of the Ferris House, Auer House, Auer Garage and Sinclair Station. The sheer domination of the size, scale and massing of the proposed project creates this encroachment." Further, the Commission found that the project "is not compatible and is inconsistent with the historic character of the structures because it does not preserve the historic relationship between the buildings and the landscape." According to the Commission, "[t]he relationship between the height and width of the undertaking is not similar in proportion to existing adjacent historic structures, which, in turn, encroaches upon the setting of the adjacent historic structures." Finally, the Commission found that "[t]he proposed new construction's original space encroaches upon the Ferris House by sitting only about 13' away, severely altering the views from this historic structure." After making these findings, the Commission adopted the opinions of Mr. Kuchenbecker contained in his report recommending that the Commission not grant B.Y.'s application for project approval.

the City, "How can a property owner be on notice as to what guidelines the [Commission] is going to use to make a determination as to whether a project is going to damage, destroy, or encroach upon historic property?" Counsel for the City directed the court to DCO 17.68.020(11), which provides that adopted guidelines will be considered in determining whether a project will encroach upon, damage, or destroy a historic property, and DCO 17.68.050, where it states that "the Historic Preservation Commission shall use the following criteria and established design review guidelines." The court questioned whether those guidelines only come into effect after it is determined that the project *will* damage, destroy, or encroach upon district property. Counsel for the City responded, "But I think there needs to be some criteria to look at in some cases, especially when you're talking about buildings either being within the District or immediately adjacent to specific historic buildings, like the Ferris House." Counsel for B.Y. remarked that "there has been no official set of guidelines that delineate what would encroach upon, damage, or destroy. . . . Even if [the City has], Your Honor, they don't have the authority to do so. We believe that the [Commission] and the City of Deadwood are creatures of statute, and, as such, they are required to go back to SDCL 1-19B-62."

[¶5.] The court issued its second memorandum decision and an amended order of remand, reversing the Commission's ruling. Citing the plain meaning of the words in SDCL 1-19B-62, the court found no facts to support the conclusion that B.Y.'s project would "encroach upon, damage, or destroy" any specific protected property. On appeal, the City of Deadwood asserts that the circuit court erred in ruling that the Deadwood National Landmark District was not a "property" under

-3-

SDCL 1-19B-62 and erred when it reversed the Commission's decision to deny B.Y.'s application for project approval.[2]

## Analysis and Decision

[¶6.]     The City first argues that the use of the phrase "any historic property" in SDCL 1-19B-62 means that the Commission can also protect historic districts. The Deadwood National Historic Landmark District is not a locally designated historic district under SDCL ch 1-19B. Nonetheless, because B.Y.'s project is within the Deadwood National Historic Landmark District, the City maintains that it was entitled to consider whether B.Y.'s project would encroach upon, damage, or destroy the Deadwood National Historic Landmark *District*, in addition to specific historic properties.

[¶7.]     Statutory interpretation is a question of law reviewed de novo. *In re Certification of a Question of Law from United States District Court, District of South Dakota, Southern Division*, 2010 SD 16, ¶10, 779 NW2d 158, 162 (citation omitted). When interpreting the words of a statute, we give its language paramount consideration, with emphasis toward the plain meaning. *Esling v. Krambeck*, 2003 SD 59, ¶6, 663 NW2d 671, 675-76 (citing *City of Rapid City v. Anderson*, 2000 SD 77, ¶7, 612 NW2d 289, 291-92 (citations omitted)). Only when the language of a statute is unclear or ambiguous do we apply our rules of

---

2.     The City also contends that its decision to deny B.Y.'s project application was not arbitrary or capricious. Although B.Y. argued to the circuit court that the Commission's decision was arbitrary and capricious, the court declined to rule on that issue, stating, "As the proposed Project does not encroach upon, damage or destroy any historic properties, the second issue raised in the appeal need not be addressed."

construction. *See Certification of a Question of Law from United States District Court, District of South Dakota, Southern Division*, 2010 16, ¶10, 779 NW2d at 162 (citing *Wiersma*, 1996 SD 16, ¶6, 543 NW2d at 790 (citation omitted)).

[¶8.]     SDCL 1-19B-62 provides:

> Any county or municipality may enact an ordinance requiring a county or municipal historic preservation commission to review any undertaking, whether publicly or privately funded, which will encroach upon, damage, or destroy *any historic property included in the national register of historic places or the state register of historic places.* The ordinance may require the issuance of a permit before any undertaking which will encroach upon, damage, or destroy historic property may proceed. The decision to approve or deny a permit shall be based on the U.S. Department of the Interior Standards for Historic Preservation Projects codified in 36 C.F.R. 67 as of January 1, 1994. Properties owned by the State of South Dakota are exempt from local review.

(Emphasis added.) From a plain reading of the statute, the phrase "any historic property" does not include historic districts. The Legislature used the word "property" and by that use we deduce that the Legislature intended to include only those specific properties in the national or state registries of historic places. We discern a difference between historic properties and historic districts, which are made up of buildings, structures, sites, or surroundings that are of historical, architectural, archaeological, paleontological, and cultural significance. *See* SDCL 1-19B-34. To construe "any historic property" to encompass historic districts as the City insists would force into the statute a word that is simply not there. The circuit court did not err when it excluded the Deadwood National Historic Landmark District from consideration under SDCL 1-19B-62.

[¶9.]     The parties next dispute the meaning of "encroach upon, damage, or destroy" as used in SDCL 1-19B-62 and as applied by the Commission against B.Y.'s application. The City maintains that the Commission was required to use the standards in DCO 17.68.050. B.Y., on the other hand, contends that "encroach upon, damage, or destroy" must be defined using a dictionary or caselaw usage.[3] Although the City argued the applicability of the ordinances to the circuit court, the court did not consider either DCO 17.68.020(11) or DCO 17.68.050 in its decision. Rather, it limited its analysis to the terms of SDCL 1-19B-62.

[¶10.]     SDCL 1-19B-62 is an enabling statute. It gives "any county or municipality" the authority to "*enact an ordinance*" to review projects that will "encroach upon, damage, or destroy" certain properties. *Id.* (emphasis added). Therefore, the statutory language alone does not control whether the Commission's ruling was proper, and thus the court erred when it did not consider the ordinances enacted by the City. Here, the City enacted DCO 17.68.020(11), giving the Commission the power "to review and to issue or deny a permit for any undertaking or project, . . . which will encroach upon, damage or destroy any historic property included in the National Register of Historic Places or the State Register of Historic Places, which decision to approve or deny shall be based upon the United States Department of the Interior Standards for Historic Preservation Projects codified in

---

3.     B.Y. also argues that the Commission improperly considered the standards in 36 CFR 67 in denying its permit request. We need not address the applicability of 36 CFR 67 because the matter is remanded for the circuit court to review the Commission's decision of encroachment, damage, or destruction under the guidelines established in DCO 17.68.050.

36 CFR 67[.]" The ordinance further provides that "[t]his section shall not apply to any project or undertaking which the historic preservation commission or its staff determines will not encroach upon, damage or destroy any historic property. Such determination shall be based upon the guidelines adopted by the Deadwood historic preservation and district commission(s)[.]" DCO 17.68.020(11). DCO 17.68.050 then sets forth the "criteria and established design review guidelines" the Commission "shall use[.]"[4] The Commission also adopted the *Downtown Design Guidelines* to provide standards in reviewing project applications.[5]

---

4. DCO 17.68.050(B), New Construction provides:

> 1. In advance of new construction, steps shall be taken to insure evaluation of possible archaeological resources, as set forth in SDCL 1-20. 2. The following aspects of new construction shall be visually compatible with the buildings and environment with which the new construction is visually related. Including but not limited to: the height, the gross volume, the proportion between width and height of the façade(s), the proportions and relationship between door and windows, the rhythm of solids to voids created by openings in the facade, the materials, the textures, the colors, the patterns, the trims and the design of the roof. 3. Existing rhythm created by existing building masses and spaces between them shall be preserved. 4. The landscape shall be compatible with the resource, and it shall be visually compatible with the environment with which it is visually related. Landscaping shall also not prove detrimental to the fabric or a resource, or adjacent public or private improvements like sidewalks and walls. 5. No specific architectural style shall be required. 6. With respect to these new construction criteria, the commission shall also consider the zoning classification and historic integrity of visually related buildings.

5. The *Downtown Design Guidelines* provide:

> 1. New buildings should be compatible with historic buildings and development patterns without imitating older styles or details of historic buildings. This is a strongly-established policy of historic preservation. Deadwood's design guidelines can be

(continued . . .)

#25407

[¶11.]     Because DCO 17.68.020(11) indicates that the section will apply only if the undertaking will encroach upon, damage, or destroy protected historic properties, and to make such determination, the Commission shall use certain adopted standards, the Commission was empowered to consider the standards in DCO 17.68.050 when it evaluated B.Y.'s project application. But the propriety of the Commission's decision that such encroachment, damage, or destruction would occur based on those guidelines has not yet been reviewed.[6] Therefore, we remand for the court to review the Commission's decision under DCO 17.68.020(11) and DCO 17.68.050, as well as SDCL 1-19B-62.

[¶12.]     Reversed and remanded.

[¶13.]     GILBERTSON, Chief Justice, and ZINTER, MEIERHENRY, and SEVERSON, Justices, concur.

_____

(. . . continued)

> used to determine the significant characteristics of various types of historic buildings, which if incorporated into the design of new buildings, will produce compatible new buildings. Exact duplication of earlier ornamentation or architectural details is not desirable. Simplicity is an important aspect of contemporary deigns and materials and by itself can go a long way toward creating compatibility. 2. The following should be evaluated: local building restrictions; whether the buildings are commercial, industrial or residential in character; how far back from the street the building is being placed; how much space there is between buildings; whether the spacing is regular along the street; how high the buildings are; the proportion of height to width; the roof forms; how the buildings are placed on a slope; what kinds of windows and doors are most common; how trim and ornament are used, and any other notable features used in the buildings of the surrounding area.

6.     Whether the Deadwood ordinances exceed the powers conferred by SDCL 1-19B-62 has not been argued, and therefore, we do not address it.