#25824-a-JKK

**2011 S.D. 43**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ROSE PRAY,                                          Plaintiff and Appellant,

v.

WILLIS T. WHITESKUNK,                               Defendant,

and

CITY OF FLANDREAU,                                  Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MOODY COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE TIM D. TUCKER
Judge

\* \* \* \*

JOHN A. SHAEFFER of
Shaeffer Law Office
Flandreau, South Dakota                             Attorneys for plaintiff
                                                    and appellant.


GARY P. THIMSEN
ADAM R. HOIER of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls, South Dakota                           Attorneys for defendant
                                                    and appellee.

\* \* \* \*

                                                    CONSIDERED ON BRIEFS
                                                    ON MAY 23, 2011

                                                    OPINION FILED **07/27/11**

#25824

KONENKAMP, Justice

[¶1.]	Plaintiff fell and was injured when a Rottweiler broke loose from its owner and dashed across the street toward her. She brought an action for damages against the dog owner and the city. As against the city, she asserted that it knew the dog was dangerous and failed to enforce its vicious animal ordinance. In granting summary judgment for the city, the circuit court ruled that the city owed plaintiff no special duty. We affirm because plaintiff has failed to establish that the city acted to protect plaintiff individually or as a member of a specific class, induced her specific reliance on the city's protection, or failed to use due care to avoid increasing the risk of harm to her.

## Background

[¶2.]	On December 12, 2009, Rose Pray was walking her dog on a sidewalk in the City of Flandreau across the street from Willis Whiteskunk's home. As she walked by, Whiteskunk and his girlfriend, Kristen Stearns, were outside hanging Christmas lights on Whiteskunk's home. Whiteskunk was on a ladder, and Stearns was holding Whiteskunk's Rottweiler on a leash. Suddenly, the Rottweiler broke free and bolted across the street toward Pray and her dog. Whiteskunk yelled for his dog to return, and it did, but not before Pray fell, either because of Whiteskunk's dog or because she tripped over her dog's leash. Whiteskunk ran over to Pray and asked if she was alright. Pray was crying: she had hurt her knee and could not stand on her own. Whiteskunk drove her to the hospital. She had a broken knee.

[¶3.]	Pray brought a negligence suit against the city and Whiteskunk. Pray alleged that the city knew Whiteskunk's dog was dangerous and negligently failed

to enforce its vicious animal ordinance. In arguing for summary judgment, the city contended that it owed no duty to Pray, relying on *Tipton v. Town of Tabor (Tipton I)*, 538 N.W.2d 783, 785 (S.D. 1995). One generally owes no duty to control the conduct of third persons. *Id.* But in *Tipton I*, this Court held that "a government entity is liable for failure to enforce its laws . . . when it assumes a special, rather than a public, duty." *Id.* (citing *Hagen v. City of Sioux Falls*, 464 N.W.2d 396, 399 (S.D. 1990)). To determine whether a special duty exists, four elements must be considered: (1) whether the city had actual knowledge of the dangerous condition; (2) whether persons reasonably relied on the city's representations and conduct; (3) whether an ordinance or statute is clearly for the protection of a particular class of persons rather than the public as a whole; and (4) whether the city failed to use due care to avoid increasing the risk of harm. *Id.* at 787 (citing *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 806-07 (Minn. 1979)).

[¶4.] At a hearing on the city's motion for summary judgment, Pray agreed that *Tipton I* applied, but argued that summary judgment was inappropriate because there were material issues of fact in dispute on whether the city had actual knowledge that the dog was vicious, on whether she relied on the city's ordinance to protect her from vicious animals, and on whether the city increased the risk of harm to Pray when it failed to ensure that Whiteskunk complied with City of Flandreau Ordinance, Title 6, chapter 6.4 (Ordinance 6.4). In opposition to the city's motion for summary judgment, Pray presented evidence that eight months before her injury, on April 14, 2009, Whiteskunk's dog bit a city employee while the employee attempted to read the gas meter at Whiteskunk's home. After the attack, the city

#25824

declared Whiteskunk's dog a vicious animal as described in Ordinance 6.4. The city issued Whiteskunk a letter informing him of the designation and advising him of the restrictions and requirements applicable to owning a vicious animal. In particular, Whiteskunk was informed:

> If the animal is kept indoors, the animal must be under the control of a person over 18 years of age.
>
> If the animal is outdoors and attended, the animal shall be muzzled, on a leash no longer than six (6) feet and under the control of a person over 18 years of age.
>
> If the animal is outdoors and unattended, the animal must be locked in an escape proof kennel approved by the Chief of Police or his representative.
>
> > The fencing material used in the kennel must not have openings with a diameter of more than two (2) inches, and in the case of a wooden fence the gaps shall not be more than two (2) inches;
> >
> > Any gates within such pen or structure shall be lockable and of such design to prevent the entry of children or the escape of the animal;
> >
> > The required pen or structure shall have a top and bottom with both secured to the sides;
> >
> > The pen or structure shall protect the animal from the elements;
> >
> > The pen or structure may be required to have double exterior walls to prevent the insertion of fingers, hands or other objects within reach of the animal; and
> >
> > A sign denoting a vicious animal shall be displayed on the kennel or enclosure and on a place visible from the sidewalk or road adjacent to the property where the animal is kept.
>
> The owner shall carry a minimum of $100,000 liability insurance covering the medical and/or veterinary costs resulting from the vicious actions or any other damage the animal may do or cause to be done. Proof of such insurance shall be filed with the Chief of Police.

[¶5.]    Pray also offered evidence that sometime after April 28, 2009, and after Whiteskunk received this letter, Michael Eisenbarth, the Chief of Police at that time, went to Whiteskunk's residence to ensure compliance. But, according to Pray, the city failed to verify that Whiteskunk had a vicious animal sign displayed in an area visible from the sidewalk or adjacent road.

[¶6.]    At the conclusion of the hearing, the circuit court granted the city's motion for summary judgment. In its oral ruling, it remarked that there were issues of fact on whether the City had actual knowledge, whether there was reliance, and whether the harm was aggravated. But because Ordinance 6.4 is clearly for the protection of the public as a whole, the court concluded that Pray failed to establish an issue of fact on whether the ordinance was enacted for the protection of a particular class. Because she could not meet all four *Tipton I* elements the court granted summary judgment to the city. Pray appeals.

### Analysis and Decision

[¶7.]    Pray asserts that she need not establish all four *Tipton I* elements to prove that the city owed her a special duty. Because the circuit court found issues of fact on three of the four elements, she argues that summary judgment was improper. The city concedes that Pray was not required to establish an issue of fact on each of the four elements. But it maintains that there are no issues of fact on *any* element, thus the city undertook no special duty with respect to Pray.

[¶8.]    In *Tipton I,* we wrote that "[s]trong evidence concerning any combination of these factors may be sufficient to impose liability on a government entity." 538 N.W.2d at 787 (citation omitted). Then, in *Tipton II*, we reiterated that

all four elements need not necessarily be met for a special duty to exist. *Tipton v. Town of Tabor (Tipton II)*, 1997 S.D. 96, ¶ 28, 567 N.W.2d 351, 363-64 (quoting *Andrade v. Ellefson*, 391 N.W.2d 836, 841 (Minn. 1985)). Therefore, the circuit court erred in ruling that Pray needed to prove every element. Yet the court's error will not preclude us from determining whether there is any legal reason to justify summary judgment. *See Strassburg v. Citizens State Bank*, 1998 S.D. 72, ¶ 5, 581 N.W.2d 510, 513 (citation omitted).

[¶9.]     "Summary judgment is usually inappropriate in a negligence case, except when no duty exists as a matter of law." *McGuire v. Curry*, 2009 S.D. 40, ¶ 7, 766 N.W.2d 501, 505 (citing *Bordeaux v. Shannon Cnty. Sch.*, 2005 S.D. 117, ¶ 11, 707 N.W.2d 123, 126 (citation omitted)). The circuit court's conclusion that no duty was owed to a plaintiff is a question of law, reviewed de novo. *Id.; Tipton I*, 538 N.W.2d at 785. To establish that the city owed Pray a special duty, she must show some duty owed to her as an individual or as a member of a class, rather than to the public as a whole. *See Tipton II,* 1997 S.D. 96, ¶ 13, 567 N.W.2d at 358. It is insufficient that the city enacted a vicious animal ordinance. "'[E]nactments and regulations are intended only for the purpose of securing to individuals the enjoyment of rights and privileges to which they are entitled as members of the public, rather than for the purpose of protecting any individual from harm.'" *Id.* ¶ 10 (quoting Restatement (Second) of Torts § 288 cmt. b (1965)). Nonetheless, in *Tipton I,* we rejected a bright-line rule that a special duty can only exist if "there is language in a statute or ordinance[,] which shows an intent to protect a particular and circumscribed class of persons." 538 N.W.2d at 787 (overruling *Hagen v. City of*

*Sioux Falls*, 464 N.W.2d 396 (S.D. 1990)).  Had we not rejected such a rule, Pray's claim would fail, for the city's vicious animal ordinance, by its plain language, is not intended to protect a particular or circumscribed class of persons.

[¶10.]    An enactment's words being just one consideration, however, we look to the additional relevant elements identified in *Tipton I*: actual knowledge of a dangerous condition, reasonable reliance, and failure to avoid increasing the risk of harm.  *Id.*  These additional elements assist courts in deciding whether a special duty has been assumed, and whether a city "has by its conduct already made a policy decision to deploy its resources to protect [an individual or class of individuals]."  *Tipton II,* 1997 S.D. 96, ¶ 13, 567 N.W.2d at 358.

[¶11.]    Because we view the evidence in a light most favorable to the nonmoving party, we must conclude that the city had actual knowledge of the dog's dangerousness.  Indeed, the evidence is substantial.  Before April 14, 2001, several postal workers reported Whiteskunk's dog to the city.  Postal workers Martin Parsley and Erika Leacraft testified by deposition about their encounters with Whiteskunk's Rottweiler, and its dangerous propensities.  Most significant, on April 28, 2009, the city declared the Rottweiler to be vicious after it bit a city employee.

[¶12.]    In *Tipton II*, we held that evidence of actual knowledge alone is insufficient to establish that a city undertook a special or private duty.  *See* 1997 S.D. 96, ¶ 28, 567 N.W.2d at 364.  To conclude otherwise would impose liability against a government entity for simple negligence, and would "judicially intrude[] upon resource allocation decisions belonging to policy makers."  *Id.*  Therefore,

"[o]nly when actual knowledge is coupled with one or more of the other factors, can we uphold both the spirit and substance of the private duty exception." *Id.*

[¶13.] On the remaining elements — reasonable reliance on representations and conduct of the city, and evidence of a failure by the city to use due care to avoid increasing the risk of harm — there are no issues of fact in dispute. Pray presented no evidence that she relied on specific actions or representations of the city, which caused her to forego other alternatives of protecting herself. *See Tipton II*, 1997 S.D. 96, ¶¶ 32-33, 567 N.W.2d at 365. Nor has she presented any evidence that she was aware the city declared Whiteskunk's dog to be vicious.

[¶14.] Nonetheless, Pray avers that the city failed to use due care to avoid increasing the risk of harm to her because the city failed to ensure that Whiteskunk complied with the requirements of Ordinance 6.4 after the city specifically acted and declared Whiteskunk's dog to be vicious. The city's failure, according to Pray, increased the risk of harm to her because if Whiteskunk had a sign warning that a vicious dog was on the premises she would have walked a different route. This element, however, does not ask whether the city simply failed to act, but whether the city failed to use due care to avoid *increasing the risk of harm*. The city has to be more than negligent. A failure to diminish potential harm is not enough. The city's actions must either cause the harm itself or have exposed Pray to new or greater risks, leaving Pray in a worse position than she would have been before the city's actions. *See id.* ¶ 38.

[¶15.] While there is evidence that the city failed to ensure Whiteskunk's full compliance with Ordinance 6.4, there is no evidence that Pray was in a worse

position after the city's action than she would have been had the city not acted. Before the city acted, Whiteskunk had no restrictions or requirements for his vicious dog. There was no requirement that it be on a leash, contained in an escape-proof kennel, or controlled by a person over 18 years old. Because there is no evidence that the official action taken by the city caused the harm itself or exposed Pray to new or greater risks, leaving her in a worse position than she was in before the city took action, Pray has failed to establish an issue of fact in dispute on this element.

[¶16.] Although the circuit court incorrectly ruled that all four *Tipton I* elements must be established to prove a special duty, we can declare as a matter of law that Pray has not met the legal requirements to show such a duty.

[¶17.] Affirmed.

[¶18.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and MEIERHENRY, Retired Justice, concur.