#28234, #28239, #28252-aff in part & rev in part-SLZ
**2018 S.D. 1**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

PIERCE MCDOWELL and
BARBARA MCDOWELL,                          Plaintiffs and Appellees,

     v.

JOSEPH SAPIENZA and
SARAH JONES SAPIENZA, M.D.,                 Defendants and Appellants,

and

CITY OF SIOUX FALLS,                         Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN PEKAS
Judge

\* \* \* \*

RONALD A. PARSONS, JR.
STEVEN M. JOHNSON
SHANNON R. FALON of
Johnson Janklow Abdallah,
  Reiter & Parsons LLP
Sioux Falls, South Dakota                    Attorneys for plaintiffs
                         and appellees McDowells,


RICHARD L. TRAVIS
ADAM R. HOIER of
May & Johnson, P.C.
Sioux Falls, South Dakota                    Attorneys for defendants
                         and appellants Sapienzas.

                         ARGUED OCTOBER 3, 2017
                         OPINION FILED **01/03/18**

WILLIAM C. GARRY
MELISSA R. JELEN of
Cadwell, Sanford, Deibert
  & Garry, LLP
Sioux Falls, South Dakota

Attorneys for defendant and
appellee City of Sioux Falls

MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
Assistant Attorney General

for Amicus Curiae S.D.
State Historical Society

\* \* \* \*

#28234, #28239, #28252

ZINTER, Justice

[¶1.]     Property owners constructed a new home on property located within a historic district. Adjacent owners alleged the home violated state regulations on new construction in historic districts as well as a local ordinance governing chimneys. Adjacent owners sought a mandatory injunction requiring modification or reconstruction of the new home. Adjacent owners also sued the City of Sioux Falls, alleging negligence in issuing a building permit and failing to enforce the regulations. The circuit court granted the injunction, and it concluded that the City owed adjacent owners a duty to properly enforce building codes. We affirm the issuance of an injunction, reverse the duty conclusion, and remand.

## Facts and Procedural History

[¶2.]     The homes at issue are located in the McKennan Park Historic District of Sioux Falls (McKennan Park). McKennan Park is a historic property listed on the national register of historic places. According to its nomination form, McKennan Park "is significant in the areas of architecture, landscape architecture, community planning, and social/humanitarianism."

[¶3.]     In 2014, Joseph and Dr. Sarah Sapienza purchased a house in McKennan Park that they intended to renovate. The house was designated an "intrusion" and "noncontributing property," and it was not listed on the state or national registers of historic places. Pierce and Barbara McDowell own a home on adjacent property. McDowells' home is designated as a "contributing" property due to its historical and architectural significance, and it is listed on the state and national registers.

-1-

[¶4.]     As a result of complications not relevant to this case, Sapienzas' initial plans changed. They decided to raze the house and construct a new home. They hired Natz and Associates, an architectural firm with experience in historic districts, to design the new home.

[¶5.]     Bob Natz prepared architectural renderings but was later terminated after a disagreement with Sapienzas. Although Sapienzas terminated Natz, Sapienzas submitted his renderings to the Sioux Falls Board of Historic Preservation for approval. The Board scheduled a hearing and Mr. Sapienza appeared. He disclosed that some changes would be made to Natz's plans. He also informed the Board that the new home would be larger than the previous structure. Based on the information provided, the Board approved the proposal.

[¶6.]     Sapienzas hired Sorum Construction, a firm that was not experienced with construction in historic districts, to finish designing and building the home. Sorum obtained a building permit from the City of Sioux Falls. The submitted building plans indicated the home would comply with the maximum height and setback requirements under City ordinances. Construction began in October 2014.

[¶7.]     As construction progressed, McDowells became increasingly concerned about the proximity and size of Sapienzas' home. Sapienzas sited their home five feet from the property line, which complied with the City setback ordinance. McDowells' home is located two feet from the same property line, the minimum setback requirement at the time their home was built in 1924. Thus, the two homes are only seven feet apart. Additionally, Sapienzas' home is 44.5 feet tall, which is substantially taller than McDowells' home.

[¶8.]	In early May 2015, McDowells requested an inspection of their chimney for their wood-burning fireplace. The fire inspector informed them that they could no longer use their fireplace. The inspector noted that a City ordinance required chimneys to extend at least two feet above the highest point of any structure located within ten horizontal feet of the chimney. Because the eave of the newly constructed Sapienza home was approximately ten feet above and six feet south of the top of McDowells' chimney, McDowells' use of the chimney would violate the ordinance.

[¶9.]	On May 8, 2015, four days after receiving the inspection report, McDowells' attorney sent Sapienzas a letter demanding they cease and desist construction or face legal action. The letter alleged Sapienzas' home violated height and setback regulations. Sapienzas did not stop construction; and on May 15, 2015, McDowells initiated this action. Sapienzas continued with construction until the home was completed in January 2016.

[¶10.]	McDowells' suit against Sapienzas is based on theories of negligence and nuisance. McDowells allege that construction of Sapienzas' home violated the chimney ordinance, as well as ARSD 24:52:07:04, a state regulation governing new construction in historic districts. McDowells sought injunctive relief and in the alternative, damages. They also sued the City for negligence. They alleged the City was negligent in issuing the building permit and permitting Sapienzas to build a home that violated building regulations.

[¶11.]	The circuit court bifurcated the issues and first considered McDowells' claim for injunctive relief. After a three-day trial, the court issued a lengthy

memorandum decision indicating it would grant a mandatory injunction requiring Sapienzas to modify their home to comply with the State regulation for historic districts. Sapienzas were also required to modify their home so that McDowells could use their fireplace. The court concluded an injunction was appropriate because: (1) "Sapienzas brought the harm," (2) "the harm [was] irreparable and unable to be cured by monetary compensation," and (3) the hardship suffered by Sapienzas would not be disproportionate to the benefit gained by McDowells and McKennan Park as a whole. The court also rejected Sapienzas' defenses of laches and assumption of the risk. With respect to the City, the court concluded that the City owed a duty to McDowells to properly enforce the historic-district regulation and chimney ordinance. The court adopted its memorandum decision as its findings of fact and conclusions of law, and it entered a judgment granting the injunction.

[¶12.] Sapienzas appeal, raising a number of issues that we restate as follows:

1. Whether the chimney ordinance is a setback requirement that applies to Sapienzas' home.

2. Whether the State historical regulation for new construction within historic districts applies to Sapienzas' home.

3. Whether the circuit court abused its discretion in granting an injunction.

4. Whether the circuit court erred in denying Sapienzas' affirmative defenses of laches and assumption of the risk.

The City raises the following issues by notice of review:

5. Whether the City owed a duty to McDowells to properly enforce building regulations.

6. Whether the circuit court erred in failing to enter judgment in favor of the City.

McDowells raise the following issue by notice of review:

7. Whether the circuit erred in failing to enter judgment holding the City negligent.

## Decision

*Applicability of the Chimney Ordinance*

[¶13.]    The circuit court ruled that the City's chimney ordinance, § R1003.9 of the International Residential Code,[1] is a ten-foot setback requirement that prohibited siting a structure on Sapienzas' lot within ten feet of McDowells' chimney. The court acknowledged that Sapienzas' home did not violate the City's five-foot setback ordinance. But the court reasoned that the chimney regulation in § R1003.9 was also a setback requirement; and because the two regulations conflicted with respect to "setback requirements," the more stringent chimney regulation controlled. *See* SDCL 11-4-6 (regulating the priority of conflicting regulations).[2]

---

1.    Section R1003.9 of the International Residential Code, as adopted by the City, provides that "[c]himneys shall extend at least 2 feet (610 mm) higher than any portion of a building within 10 feet (3048 mm), but shall not be less than 3 feet (914 mm) above the highest point where the chimney passes through the roof."

2.    SDCL 11-4-6 provides:

> Whenever the regulations made under authority of [SDCL chapter 11-4] require a greater width or size of yards . . . or require a greater percentage of lot to be left unoccupied, or impose other higher standards than are required in any other statute or local ordinance or regulation, the provisions of the regulations made under authority of this chapter shall govern.

(continued . . .)

[¶14.] Sapienzas argue the circuit court erred in interpreting § R1003.9 as a setback requirement that applied to Sapienzas' home. We agree with Sapienzas. By its express terms, § R1003.9 regulates the height of chimneys on a structure, not the siting of structures on other properties. Although Sapienzas' new home may have caused McDowells' home to fall out of compliance, Sapienzas' home was not sited in violation of the chimney regulation. We reverse the circuit court's contrary legal conclusion.

*Applicability of Historic-District Regulations*

[¶15.] ARSD 24:52:07:04 is a historic-district regulation that establishes standards for "[n]ew construction or additions within a historic district." The regulations cover numerous standards including, among others, the design, height, width, and proportion of such new construction. For the purpose of simplification, we only discuss the standard governing the height of new construction in historic districts under ARSD 24:52:07:04(2).[3]

[¶16.] Testimony at trial established that the average height of relevant historic buildings in McKennan Park was 32.84 feet; that under the regulation, new construction was therefore limited to 36.08 feet; and that the highest point of

---

(. . . continued)

> Wherever the provisions of any other statute or local ordinance or regulation require a greater width or size of yards . . . or other higher standards than are required by the regulations made under authority of this chapter, the provisions of such statute or local ordinance or regulation shall govern.

3. ARSD 24:52:07:04(2) provides: "The height of new buildings or additions to existing buildings may not exceed a standard variance of ten percent of the average height of historic buildings on both sides of the street where proposed new construction is to be located . . . ."

Sapienzas' home was 44.50 feet. The court ruled that Sapienzas' home violated the regulation because it was constructed more than eight feet higher than the maximum permitted height.

[¶17.]    Sapienzas argue that ARSD 24:52:07:04 does not apply to their property. Their argument is understandably not based on the language of that regulation because it unequivocally applies to "[n]ew construction or additions *within* a historic district." *See id.* (emphasis added). Instead, they rely on ARSD 24:52:07:01, which provides that the regulations in ARSD chapter 24:52:07 "apply to *historic properties listed* on the state register or the national register, or both." (Emphasis added.) Because Sapienzas' home is not listed on the state or national registers, they contend ARSD 24:52:07:04 does not apply. They interpret ARSD 24:52:07:01 to limit ARSD 24:52:07:04's application to new construction on individual properties already listed on the state or national registers. We disagree with this interpretation.

[¶18.]    It must first be noted that ARSD 24:52:07:01 does not contain an express reference to ARSD 24:52:07:04 or any other regulation. Instead, it is a one-sentence introductory provision that merely describes the general nature of the four regulations that are found in the chapter.

[¶19.]    More importantly, although ARSD 24:52:07:01 indicates that the rules in ARSD chapter 24:52:07 apply to historic properties listed on the state or national registers, the McKennan Park Historic District itself is a "historic property" that is "listed" on the state and national registers. That is because the enabling statutes for ARSD 24:52:07:01 and ARSD 24:52:07:04 include historic districts within the

statutory definition of "historic property." *See* SDCL 1-19A-2(3) (defining "historic property" as "any building, structure, object, *district*, area, or site that is significant in the history, architecture, archaeology, paleontology, or culture of the state, its communities or the nation" (emphasis added)).[4] Therefore, ARSD 24:52:07:01's reference to listed "historic properties" cannot be read as language limiting the applicability of the chapter's substantive regulations to individually owned historic properties. By statutory definition, McKennan Park itself is a listed historic property.

[¶20.] The Legislature has confirmed that when a "historic property" is statutorily defined to include a historic district itself, the laws governing preservation of historic districts are not limited to individual properties listed on state and national registries. In *In re B.Y. Development, Inc.*, 2010 S.D. 57, 785 N.W.2d 296, we reached the opposite conclusion. We concluded that the plain meaning of the undefined phrase "historic property" did *not* include historic districts themselves. *See id.* ¶ 8, 785 N.W.2d at 299-300. We also concluded that the phrase "historic property" was "intended to include only those specific properties in the national or state registries of historic places." *Id.* Although Sapienzas ask us to draw those same conclusions again today, the Legislature reversed our interpretation. Immediately after the *B.Y. Development* decision, the Legislature overturned our conclusions by enacting a statute incorporating SDCL 1-19A-2's

---

4. ARSD 24:52:07:04 was enacted pursuant to SDCL 1-19A-5, -11, and -29. These statutes delegate to the State Historical Society Board of Trustees the authority to enact rules establishing standards for a "historic property." SDCL 1-19A-5, -29, -11.

statutory definition that makes historic districts themselves "historic properties" for purposes of regulating activity in historic districts. *See* 2011 S.D. Sess. Laws ch. 9, § 1 (codified as SDCL 1-19B-1.1). This history reflects that the Legislature intended the historic preservation laws to apply to all properties within historic districts, not just specific properties listed on the state or national registers.

[¶21.]     Sapienzas' contrary interpretation would nullify the essential purpose of ARSD 24:52:07:04. The language of the rule clearly indicates it is intended to set standards for "new construction or additions *within* a historic district." *See id.* (emphasis added). Additionally, the express purpose of the historic preservation statutes is "to provide for the preservation of [South Dakota's] historical, architectural, archaeological, paleontological, and cultural sites by protecting, restoring, and rehabilitating sites, buildings, structures, and antiquities of the state which are of historical significance." SDCL 1-19A-1. Although Sapienzas propose an interpretation that would enable ARSD 24:52:07:04 to have meaning in some limited situations, their interpretation essentially nullifies the statutory purposes of preserving, protecting, restoring and rehabilitating historical sites. As other courts have recognized, permitting owners of noncontributing properties within a historic district to ignore standards for new construction within historic districts inevitably results in structures that detract from and impair the historical nature of the district. *See Vieux Carre Prop. Owners & Assocs., Inc. v. City of New Orleans,* 167 So. 2d 367 (La. 1964); *Faulkner v. Town of Chestertown,* 428 A.2d 879 (Md. 1981); *A-S-P Assocs. v. City of Raleigh,* 258 S.E.2d 444 (N.C. 1979).

[¶22.]     For all of the foregoing reasons, we disagree with Sapienzas' argument that ARSD 24:52:07:01 limits ARSD 24:52:07:04's application to individual properties that are listed on the state or national registers. We conclude that because McKennan Park is a "historic property" that is listed on the state and national registers, the requirements of ARSD 24:52:07:04 apply to any "new construction or additions *within*" that district. *See id.* (emphasis added). The circuit court did not err in concluding that Sapienzas' home was constructed in violation of ARSD 24:52:07:04's standards for new construction within historic districts.

*Injunctive Relief*

[¶23.]     Sapienzas argue the circuit court abused its discretion in granting an injunction requiring modification of their home. When reviewing the propriety of injunctive relief, we "first determine whether an injunction was statutorily authorized under SDCL 21-8-14, a question of law we review de novo." *Hoffman v. Bob Law, Inc.*, 2016 S.D. 94, ¶ 10, 888 N.W.2d 569, 573. If the injunction was authorized, we then review the circuit court's decision to grant the injunction under the abuse of discretion standard. *Id.* We defer to the circuit court's findings of fact unless clearly erroneous. *Id.*

[¶24.]     An injunction was statutorily authorized in this case. Under SDCL 21-8-14(1), an injunction "may be granted to prevent the breach of an obligation existing in favor of the applicant . . . [w]here pecuniary compensation would not afford adequate relief." Pecuniary compensation would not provide adequate relief in this case. A home within a historic district that is not built in accordance with

historic standards impairs the historical integrity of the district. *See Faulkner*, 428 A.2d at 883 (noting new construction in historic districts is subject to control "to prevent the intrusion of any building which would be destructive of the nature of the district"); *A-S-P Assocs.*, 258 S.E.2d at 450-51 (noting that regulating construction of structures that "'would be incongruous with the historic aspects of the district' is the only feasible manner in which the historic aspects of an entire district can be maintained"). A number of other property owners in McKennan Park confirmed this view at trial. Additionally, the evidence indicates that as constructed, Sapienzas' home not only decreased the market value of McDowells' home, it interfered with their use and enjoyment of their home. As we explain in more detail, *see infra* ¶ 26, these types of intangible harm are often not rectified by pecuniary compensation. Because the evidence indicates that pecuniary compensation would not afford adequate relief here, the circuit court was statutorily authorized to issue an injunction.

[¶25.]      We next consider whether the court abused its discretion in issuing the injunction. Four factors are often relevant:

> (1) Did the party to be enjoined cause the damage? (2) Would irreparable harm result without the injunction because of lack of an adequate and complete remedy at law? (3) Is the party to be enjoined acting in bad faith or is the injury-causing behavior an innocent mistake? (4) In balancing the equities, is the hardship to be suffered by the enjoined party disproportionate to the benefit to be gained by the injured party?

*Hoffman*, 2016 S.D. 94, ¶ 12, 888 N.W.2d at 573. Sapienzas argue the circuit court erred in concluding that the second, third, and fourth factors weighed in favor of granting the injunction. We address each in turn.

[¶26.]     Sapienzas first contend McDowells failed to show irreparable harm. "Harm is irreparable 'where it cannot be readily, adequately, and completely compensated with money.'" *Strong v. Atlas Hydraulics, Inc.*, 2014 S.D. 69, ¶ 17, 855 N.W.2d 133, 140 (quoting *Knodel v. Kassel Twp.*, 1998 S.D. 73, ¶ 13, 581 N.W.2d 504, 509). But Sapienzas take too narrow a view of the harm caused by their home. They focus only on the harm suffered by McDowells; i.e., McDowells' inability to use their fireplace and their substantial loss of natural sunlight. Although Sapienzas attempt to minimize those harms, the circuit court disagreed. It found that "the character of [the McDowell] residence is devastated by the oversized Sapienza residence." Moreover, the injunction was also based on the harm to McKennan Park itself. The court found that McKennan Park's "historic context is forever undermined." This type of intangible harm to McKennan Park would not be remedied by the payment of money to McDowells. Even if McDowells could be fully compensated for their individual loss, pecuniary compensation would not remedy McKennan Park's continuing and long-term loss of its historic character.

[¶27.]     Sapienzas next argue they were not sufficiently culpable to warrant injunctive relief. The circuit court, however, found that Sapienzas' acts were not innocent mistakes. The court first found that Sapienzas fired Natz and replaced him with a construction company that was not familiar with standards for construction in historic districts. The court also found that in some respects, the renderings that Sapienzas presented to the Sioux Falls Board of Historic

Preservation did not accurately reflect what Sapienzas later built.[5] The court finally found that Sapienzas did not inform the Board that the house would be forty-five feet tall, that the house would not be built in the same footprint as the existing house, and that the house would result in a loss of a large amount of "green space." There is evidence in the record to support these findings.

[¶28.]       Sapienzas finally argue that the benefit to be gained by McDowells is disproportionate to the hardship that will be suffered by Sapienzas if they must incur the expense of tearing down and rebuilding their home. Sapienzas contend they are no different than the property owner who constructed a residential structure in violation of restrictive covenants in *Harksen v. Peska*, 1998 S.D. 70, 581 N.W.2d 170.

[¶29.]       In *Harksen*, this Court reversed an injunction ordering the defendant to tear down his newly constructed, $100,000 cabin that violated a restrictive covenant. *Id.* ¶ 33, 581 N.W.2d at 176. Although we acknowledged the defendant's culpability in building the cabin with knowledge of the restrictive covenant, we concluded that destroying a $100,000 residence would be inequitable. But we did so because "the cabin [was] barely visible from the edge of [the plaintiff's] land, and [the cabin was] not visible at all from [the plaintiff's] building site." *Id.* ¶ 32. Additionally, there was no evidence that the cabin caused any harm to other property owners in the area. *See id.* ¶ 33 n.11.

---

5.     For example, the renderings showed trees on the north side of the house, implying there would be a much larger space between Sapienzas' home and McDowells' home.

[¶30.] Sapienzas' home is much different than a cabin that is "barely visible" and only causing slight harm to other property owners in the area. Sapienzas' home is only seven feet from McDowells' home, and the circuit court found that it interfered with McDowells' private use and enjoyment of their home. The court specifically found that because of the home's proximity and size, the home rendered McDowells' wood-burning fireplace unusable, it blocked McDowells' natural sunlight, it had a window that looked directly into the window of McDowells' daughter's bedroom and bathroom, it interfered with any privacy in McDowells' living room, and it generally dominated McDowells' home. Moreover, as previously noted, several other property owners in the district testified that Sapienzas' home impaired the historical integrity of McKennan Park. As the circuit court found, the violation of historic-district regulations resulted in a home that "undermine[d] the entire historic district." In the end, the circuit court clearly considered the substantial hardship that will be suffered by Sapienzas to comply with the historic regulations. But the court ultimately found that the benefit to McDowells and McKennan Park was not disproportionate to Sapienzas' hardship. There is evidence in the record supporting that finding.

[¶31.] This is a difficult case. Both parties presented compelling cases, and substantial harm will befall whichever party does not prevail. But the historic regulations apply to Sapienzas' home, the circuit court clearly balanced the relative hardships, and it applied the required factors for injunctive relief. Because we cannot say that the circuit court's decision granting injunctive relief was made for an "unjustified purpose[ or] against reason and evidence," *see Stahl v. Pollman*,

2006 S.D. 51, ¶ 9, 716 N.W.2d 794, 796, we affirm the court's issuance of injunctive relief.[6]

*Affirmative Defenses*

[¶32.]     Sapienzas argue the circuit court erred in rejecting their defenses of laches and assumption of the risk. Laches required a showing that "(1) [McDowells] had full knowledge of the facts upon which the action [was] based, (2) regardless of this knowledge, [McDowells] engaged in an unreasonable delay before commencing this suit, and (3) that allowing [McDowells] to maintain the action would prejudice [Sapienzas]." *Burch v. Bricker*, 2006 S.D. 101, ¶ 15, 724 N.W.2d 604, 608 (emphasis omitted).

[¶33.]     Sapienzas claim McDowells unreasonably and prejudicially delayed filing suit. Their claim is predicated on an August 2014 text message in which Mr. McDowell said that "the home is just way too big for the lot." Sapienzas also argue that McDowells could have objected at the time the proposal was considered by the Sioux Falls Board of Historic Preservation in May 2014.

[¶34.]     We acknowledge these facts but agree with the circuit court that laches did not apply. First, McDowells did not have full knowledge of the facts at the time of those events. Construction of the house did not begin until October 2014, and this record suggests that McDowells could not have known how tall the house would

---

6.     Sapienzas also argue the circuit court's findings of fact and conclusions of law are insufficient for meaningful appellate review. Although the court's findings of fact and conclusions of law are insufficient to fully and finally adjudicate all potential issues that may arise in this case, they are sufficient to review the circuit court's determinations regarding the applicability of the regulations as well as the propriety of injunctive relief.

actually be until after construction began. Furthermore, McDowells did not engage in unreasonable delay. Shortly after discovering they could no longer use their fireplace, McDowells hired an attorney and sent a cease and desist letter demanding Sapienzas stop construction. When Sapienzas continued construction, McDowells quickly filed this suit.

[¶35.]     We also agree that McDowells did not assume the risk of Sapienzas' building violations simply because they owned a home that was only two feet from the property line. The record reflects that McDowells' home was lawfully sited at the time it was constructed. Consequently, applying the defense under these facts would require a rule of law that those lawfully possessing land must assume that others may unlawfully build near them in violation of building regulations. The law does not presume that it may be violated. The court did not err in rejecting this defense.

*McDowells' Negligence Claim Against the City*

[¶36.]     The City argues that it owed no duty to McDowells to properly enforce the building code and historic regulations and that McDowells' negligence claim was barred by the public duty doctrine.[7] Under the public duty doctrine, government entities are generally determined to owe governmental duties only to the public, not to individuals. *Tipton v. Town of Tabor* (*Tipton II*), 1997 S.D. 96, ¶ 10, 567 N.W.2d 351, 356. Because such duties exist only for the protection of the public, they cannot be the basis for liability to a particular class of persons. *Id.*

---

7.     The existence of a duty in a negligence action is a question of law we review de novo. *Zerfas v. AMCO Ins. Co.*, 2015 S.D. 99, ¶ 8, 873 N.W.2d 65, 69.

[¶37.] The City contends the public duty doctrine applies. McDowells contend the doctrine does not apply because issuance of a building permit is not a matter of law enforcement or public safety. *See E.P. v. Riley*, 1999 S.D. 163, ¶ 22, 604 N.W.2d 7, 13-14 (limiting the public duty rule to issues involving law enforcement or public safety).

[¶38.] In *Hagen v. City of Sioux Falls*, 464 N.W.2d 396 (S.D. 1990), we held that municipalities owed no duty to individual property owners to properly inspect buildings and ensure compliance with building codes. *Id.* at 400. We specifically held that building codes "only [implicate a] general duty to the public as a community, rather than an obligation to a specific class of individual members of the public." *Id.* In *Tipton v. Town of Tabor* (*Tipton I*), we modified *Hagen's* bright-line test for analyzing public duty questions in other cases, 538 N.W.2d 783, 787 (S.D. 1995), but *Tipton I* did not reverse *Hagen's* holding regarding building codes. *Accord Tipton II*, 1997 S.D. 96, ¶ 13, 567 N.W.2d at 358 ("While many plaintiffs have invoked the special duty rule to support claims against public entities, most courts have found no liability for matters such as failure to adequately inspect a structure for violations of fire and building codes . . . ."). Indeed, we examined *Hagen* in *Riley* itself. Without disapproval, we discussed *Hagen's* conclusions that building codes were "aimed only at public safety or general welfare," that they did "not create an obligation to a specific class of individual members of the public," and that they only created a "general duty to the public as a community." *Riley*, 1999 S.D. 163, ¶ 16, 604 N.W.2d at 12. Thus, although we have limited application of the public duty rule in other cases, we have not retreated from *Hagen's* core

holding that building codes do "not create a duty of care [that] will support" a negligence claim. *Hagen*, 464 N.W.2d at 400.

[¶39.]     Although our post-*Hagen* cases have changed the way we approach the duty question in cases involving government entities, we adhere to *Hagen's* conclusion that building codes do not create a duty of care that will support a negligence claim. As the Washington Supreme Court observed, "[T]he primary purpose of building permits . . . is to secure to local government consistent compliance with construction, zoning and land use ordinances." *Taylor v. Stevens County*, 759 P.2d 447, 452 (Wash. 1988); *accord Hagen*, 464 N.W.2d at 398 ("Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established."). But by issuing a permit, municipalities do not "imply that the plans submitted are in compliance with all applicable codes." *Taylor*, 759 P.2d at 452. Local governments should not, for the particular benefit of individual persons, bear the burden of ensuring that every single building constructed within its jurisdiction fully complies with applicable codes. *Id.*; *see Hagen*, 464 N.W.2d at 398. The duty to ensure compliance rests with the individuals responsible for construction. "Permit applicants, builders and developers are in a better position to prevent harm to a foreseeable plaintiff than are local governments." *Taylor*, 759 P.2d at 452.

[¶40.]     McDowells also failed to show that the City owed them a special duty. *See Tipton II*, 1997 S.D. 96, ¶ 15, 567 N.W.2d at 358. First, many of McDowells' arguments in support of a special duty relate to Sapienzas' claimed violation of the

chimney ordinance, but we have now determined there was no violation. Additionally, McDowells have not established three of the four requirements for establishing a special duty: that the City had actual knowledge Sapienzas' home would violate ARSD 24:52:07:04; that McDowells relied on representations of the City to protect them; or that ARSD 24:52:07:04 sets forth mandatory acts that the City undertook to protect the individual property owners in the historic district. *See Tipton II*, 1997 S.D. 96, ¶ 15, 567 N.W.2d at 358. Thus, the circuit court erred in holding that the City owed a duty to McDowells to ensure compliance with applicable building codes and regulations.

## Conclusion

[¶41.] The new-construction standards in ARSD 24:52:07:04 apply to Sapienzas' home, and the circuit court did not abuse its discretion in granting an injunction with respect to the historic-district regulations. The court did, however, err in concluding that Sapienzas' home violated the chimney ordinance and that the City owed a duty to McDowells. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[8]

[¶42.] GILBERTSON, Chief Justice, and SEVERSON and KERN, Justices, and WILBUR, Retired Justice, concur.

[¶43.] JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

---

8. In light of our disposition, we need not address the other issues the parties raised in this appeal.