#28600-r-PER CURIAM
**2019 S.D. 15**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

WILLIAM J. MAHER d/b/a
VALLEY VILLAGE MOBILE
HOME PARK,                                                 Plaintiff and Appellant,

    v.

CITY OF BOX ELDER,                                   Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CRAIG A. PFEIFLE
Judge
\* \* \* \*

GREGORY A. EIESLAND
AARON D. EIESLAND of
Johnson Eiesland Law Offices, P.C.
Rapid City, South Dakota                          Attorneys for plaintiff and
                                                                    appellant.


DONALD P. KNUDSEN
KATELYN A. COOK of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota                          Attorneys for defendant and
                                                                    appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 12, 2018
OPINION FILED **03/13/19**

PER CURIAM

[¶1.] William Maher brought suit against the City of Box Elder (the City), arguing it negligently operated its water system and caused his waterlines to break. The City moved for summary judgment, asserting the public duty rule precluded imposition of a duty to Maher absent proof the City assumed a special duty. The circuit court granted summary judgment. We reverse.

*Facts and Procedural History*

[¶2.] William Maher owns a mobile home park in Box Elder and receives water from the City's water system. The City owns, operates, and maintains its water system in part to supply water to its resident customers, including Maher. The waterlines within the park are privately owned and maintained.

[¶3.] To supply water, the City used a well that is known as the Madison Well No. 6. In 2006, the City purchased and installed booster pumps to move water from the Madison Well to a water tower located by a local school. In 2014, the City drilled a new well known as the Ghere Well and created a storage reservoir beside it. In 2014, the water in the Ghere Well exceeded maximum permissible contaminates, and the City took the well offline. The City, however, still needed to supply sufficient water to its customers. In October and November 2014, after taking the Ghere Well offline, the City installed more powerful booster pumps at the Madison Well location to push water to the reservoir located by the Ghere Well.

[¶4.] In February 2015, numerous waterlines within Maher's mobile home park broke. Maher reported the breaks to the City. The City subsequently installed pressure reducing valves at the corners of Maher's property, and Maher

experienced no additional breaks.  Maher alleged the City admitted the absence of the pressure reducing valves caused the park's waterlines to break, but the City disputed Maher's claim.

[¶5.]     In November 2016, Maher brought suit against the City for negligence. He argued the City had a duty to operate, control, and maintain its water system in a reasonable manner.  He contended the City breached that duty when it negligently increased the pressure in its waterlines without installing pressure reducing valves.  More specifically, Maher claimed the City failed "to properly design changes and alterations to its water system," failed "to install proper pressure reducing valves," failed "to adhere to prudent engineering standards for design and operation of a water system," failed "to take necessary precautions to protect" its water system, and failed "to employ proper water system design professionals in altering [its] water delivery system."  He also alleged the City's negligence caused damage to the park's waterlines.

[¶6.]     The City moved for summary judgment, arguing the public duty rule precluded imposition of a duty because Maher failed to establish the City owed him a special duty.  In response, Maher argued the public duty rule did not apply because this is a "regular negligence" case against the City for the City's negligent operation of its water system.  He further asserted the public duty rule only applies when the question concerns whether the governmental entity owed a duty to protect another person from the misconduct of a third party.

[¶7.]     The circuit court accepted the City's argument and granted its motion for summary judgment, concluding Maher failed to identify a material issue of fact

in dispute on the question whether the City owed him a special duty. Maher appeals, asserting the circuit court erred in granting the City summary judgment.∗

*Decision*

[¶8.]     We begin with the concept that "[s]overeign immunity is the right of public entities to be free from liability of tort claims unless waived by legislative enactments[.]" *Cromwell v. Rapid City Police Dep't*, 2001 S.D. 100, ¶ 12, 632 N.W.2d 20, 23. When sovereign immunity is waived, as it has been here, the public entity may be sued in the same manner as a private individual for injuries caused by the public entity's negligence to the extent the public entity participates in a risk sharing pool or purchases liability insurance. *See Tipton v. Town of Tabor* (*Tipton II*), 1997 S.D. 96, ¶¶ 9, 12, 567 N.W.2d 351, 356-57 (citing SDCL 21-32A-1). However, "[w]hen our Legislature waived immunity for public entities, it created no new causes of action[.]" *Id.* ¶ 12. As such, tort liability against a public entity in

---

∗     Our standard of review from a summary judgment is well settled:

> In reviewing a grant or a denial of summary judgment under SDCL 15-5-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Millard v. City of Sioux Falls,* 1999 S.D. 18, ¶ 8, 589 N.W.2d 217, 218 (quoting *Walther v. KPKA Meadowlands Ltd. P'ship,* 1998 S.D. 78, ¶ 14, 581 N.W.2d 527, 531).

any case requires the existence of a duty, a breach of that duty, and causation. *Id.*; *accord Blaha v. Stuard*, 2002 S.D. 19, ¶ 19, 640 N.W.2d 85, 90 (defining actionable negligence).

[¶9.] Ascertaining whether a duty exists is "'entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law[.]'" *Tipton II*, 1997 S.D. 96, ¶ 11, 567 N.W.2d at 357 (quoting W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 37, at 236 (5th ed. 1984)). For public entities, an actionable duty may be limited by what is known as the public duty rule. As its name suggests, the public duty rule recognizes that "government entities are generally determined to owe governmental duties only to the public, not individuals." *See McDowell v. Sapienza*, 2018 S.D. 1, ¶ 36, 906 N.W.2d 399, 409. When the rule is implicated, a breach of a public duty will not give rise to liability to an individual unless there exists a special duty owed to that individual. *Tipton II*, 1997 S.D. 96, ¶ 13, 567 N.W.2d at 358.

[¶10.] We first applied the public duty rule in *Hagen v. City of Sioux Falls*, 464 N.W.2d 396 (S.D. 1990). In that case, plaintiffs' contractor did not comply with the applicable building code in the placement of the studs for plaintiffs' garage and home addition; yet, the city passed the construction upon final inspection. *Id.* at 397. Plaintiffs brought a negligence suit against the city alleging it failed to properly inspect the construction of their garage and addition. The city argued the building code created a general duty to the entire public, not to plaintiffs as individuals. We agreed, holding a legislative enactment does not create a standard of conduct to be used to impose tort liability when the purpose of the enactment is

"intended only for the purpose of securing to individuals the enjoyment of rights and privileges to which they are entitled as members of the public, rather than for the purpose of protecting any individual from harm." *Id.* at 399 (quoting Restatement (Second) of Torts § 288 cmt. b (1965)).

[¶11.] This Court again examined the public duty rule in *Tipton v. Town of Tabor* (*Tipton I*), 538 N.W.2d 783, 785-86 (S.D. 1995). After plaintiffs' child was mauled by a resident's wolf-dog hybrid, they brought suit against the city for its failure to investigate and abate a nuisance caused by the resident's possession of wolf-dog hybrid. In applying the public duty rule, we recognized an exception, which would allow for an actionable duty when the government "assumes a special, rather than a public, duty." *Id.* (citing *Hagen*, 464 N.W.2d at 399). To determine whether the city assumed "to act for the protection of individuals" such that a special duty existed, we adopted a four-factor test:

> (1) the state's actual knowledge of the dangerous condition;
>
> (2) reasonable reliance by persons on the state's representations and conduct;
>
> (3) an ordinance or statute that sets forth mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole; and
>
> (4) failure by the state to use due care to avoid increasing the risk of harm.

*Id.* at 787 (quoting *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 806-07 (Minn. 1979)). "Strong evidence concerning any combination of these factors may be sufficient to impose liability on a government entity." *Id.* We remanded for the circuit court to apply the four-factor test. After applying the test on remand, the court granted summary judgment in favor of the city, concluding it did not owe

plaintiffs a special duty. We affirmed in *Tipton II*, 1997 S.D. 96, ¶ 41, 567 N.W.2d at 367.

[¶12.] Shortly after *Tipton II*, we were asked to abrogate the public duty rule in *Gleason v. Peters*, 1997 S.D. 102, ¶ 8, 568 N.W.2d 482, 484. Plaintiffs had sued Lawrence County and two sheriff's deputies for their failure to stop an underage drinking party. Plaintiffs' son was at the party when he was violently attacked by others in attendance. The deputies had responded to an anonymous tip about the underage drinking party earlier but ceased their investigation when they received a priority call on a different matter. The circuit court granted the county summary judgment because plaintiffs failed to establish the county owed them a special duty. In response to plaintiffs' argument that the public duty rule "has no place in South Dakota jurisprudence," we determined the rule "promotes accountability for offenders[.]" *Id.* (quoting *Tipton II*, 1997 S.D. 96, ¶ 10, 567 N.W.2d at 358). We declined to abrogate the rule, concluding it would make lawbreaker culpability irrelevant by focusing the liability inquiry upon a local government. *Id.* Ultimately, we upheld the circuit court's decision granting summary judgment in favor of the county and deputies. *Id.* ¶ 26.

[¶13.] One year later, we again upheld summary judgment in favor of a governmental entity for its alleged failure to prevent the misconduct of a third party. *Walther v. KPKA Meadowlands Ltd. P'ship*, 1998 S.D. 78, 581 N.W.2d 527. Plaintiff brought suit against the city and others after she was viciously raped and stabbed by her former boyfriend. As against the city, plaintiff alleged it was negligent in failing to arrest her boyfriend for domestic abuse arising out of an

earlier incident that same day. *Id.* ¶ 11. We first recognized that, "[g]enerally, the law imposes no duty to prevent the misconduct of a third person." *Id.* ¶ 17. We then applied the four-factor test to determine whether the special duty exception to the public duty rule applied, concluding plaintiff failed to establish the city owed her a special duty to prevent the misconduct of her boyfriend. *Id.* ¶ 35.

[¶14.] However, and notably, plaintiff also brought suit against the city and a police officer, alleging the officer was negligent in failing to immediately seek medical care for her upon finding her injured. *Id.* ¶ 13. We determined plaintiff's negligence suit based upon this distinct theory "is not a case that falls under the public-duty rule or the related special-duty exception." *Id.* ¶ 57. Because plaintiff's claim involved harm allegedly caused by the officer's "failure to seek medical help once he came upon the scene[,]" *id.* ¶ 57, we held a jury must determine whether the officer's "actions somehow caused, contributed, or increased her injuries." *Id.* ¶ 59.

[¶15.] We again examined the public duty rule in *E.P. v. Riley*, 1999 S.D. 163, ¶ 22, 604 N.W.2d 7, 13–14, and "specifically clarif[ied] that the public duty rule only extends to issues involving law enforcement or public safety." We then held the rule inapplicable to plaintiffs' suit against the Department of Social Services and certain employees for the alleged breach of their duty to provide placement for and supervision of an abused and neglected child when the child was in DSS custody. *Id.* ¶ 23. Although the case involved the misconduct of a third person, we held "DSS employees' actions cannot be deemed 'law enforcement' in its traditionally understood sense" or actions "within the ambit of public safety." *Id.*

[¶16.]     Since *Riley,* this Court has twice applied the public duty rule in cases involving a public entity's alleged failure to prevent the misconduct of a third party. In *Pray v. City of Flandreau,* 2011 S.D. 43, ¶ 4, 801 N.W.2d 451, 453, plaintiff was injured by a dangerous dog of which the city was aware. She alleged the city had a duty to enforce its vicious animal ordinance because, in her view, the city undertook a special duty. We disagreed, concluding that plaintiff failed to establish the existence of a special duty because, among other things, she lacked evidence she relied on actions or representations of the city. Then, in *McDowell,* 2018 S.D. 1, ¶ 6, 906 N.W.2d at 403, the city issued a building permit and allegedly permitted the construction of a home in violation of building regulations. We held that the city did not owe McDowell a special duty because building codes are "aimed" at public safety or general welfare. *Id.* ¶ 38.

[¶17.]     Here, based on our review of Maher's claims against the City and this Court's past cases applying the public duty rule, we conclude the public duty rule does not apply. First, *Riley* specifically limited the application of the public duty rule to issues involving law enforcement and public safety, and the City has not identified how its proprietary act of providing water to Maher is law enforcement or in the nature of public safety. Second, we have never held that the public duty rule automatically applies when a plaintiff brings a negligence suit against a governmental entity. *See, e.g., Tipton II,* 1997 S.D. 96, ¶ 10 n.3, 567 N.W.2d at 356 n.3 (The public duty rule "is not to be confused with 'run of the mill' officer negligence."). In fact, we have previously recognized that a governmental entity may owe a plaintiff a specific duty arising out of general principals of tort law. *See,*

*e.g., Elkjer v. City of Rapid City,* 2005 S.D. 45, ¶ 16, 695 N.W.2d 235, 241; *Pierce v. City of Belle Fourche,* 2001 S.D. 41, ¶ 23, 624 N.W.2d 353, 357; *Walther,* 1998 S.D. 78, ¶ 57, 581 N.W.2d at 538.

[¶18.]        Other courts have likewise declined to apply the public duty rule when "a private person would be liable to the plaintiff for the acts that were committed by the government[.]" *Kent v. City of Columbia Falls,* 350 P.3d 9, 17 (Mont. 2015); *Verity v. Danti,* 585 A.2d 65, 66–67 (R.I. 1991); *see generally* McQuillin, *The Law of Municipal Corporations* 53:18 (3d ed. 2018) (recognizing the rule "is simply a tool used by courts to ensure that governments are not saddled with greater liability than private actors as they conduct the people's business"); Dan Dobbs, *The Law of Torts* 346 (2d ed. 2018).

[¶19.]        Because the public duty rule does not apply, the circuit court erred when it granted the City summary judgment. The City owns, operates, and maintains a water system and does so in part to supply water to its customers, including Maher. *See* SDCL 9-47-6 (providing that the City has the power "to regulate and provide for the laying of water connections from the city water mains to the lot line"). Because the City undertook the service of providing water through its waterworks to Maher's waterline, he had the right to expect that the City would operate and maintain its water system in a reasonable manner so as to not cause injury to his waterlines. The same would be true if a private company had provided the service of supplying water from its waterlines to Maher. This is not to say the City breached its duty of care or that it was in fact negligent in its operation of its water system. The question on appeal concerns only whether the City owed Maher

a duty to use reasonable care in its operation of its water system. Maher would still bear the burden of proving the City failed to perform its duty and that Maher was injured as a result of the City's failure. *See Blaha,* 2002 S.D. 19, ¶ 19, 640 N.W.2d at 90.

[¶20.]      Reversed.

[¶21.]      GILBERTSON, Chief Justice, and KERN, JENSEN and SALTER, Justices, concur.