#28965-a-JMK
**2020 S.D. 43**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

EMILY FODNESS, CHRISTINE
FODNESS and MICHAEL FODNESS,                     Plaintiffs and Appellants,

v.

CITY OF SIOUX FALLS,                             Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CAMELA THEELER
Judge

\* \* \* \*

DANIEL R. FRITZ
TIMOTHY R. RAHN of
Ballard Spahr LLP
Sioux Falls, South Dakota                        Attorneys for plaintiffs and
                                                 appellants.


JAMES E. MOORE
ALEXIS A. WARNER of
Woods Fuller Shultz & Smith P.C.
Sioux Falls, South Dakota                        Attorneys for defendant and
                                                 appellee.

\* \* \* \*

ARGUED
JANUARY 14, 2020
OPINION FILED **07/29/20**

#28965

KERN, Justice

[¶1.]     Emily Fodness suffered extensive injuries when her apartment collapsed after a contractor demolished certain portions of a load-bearing wall. Emily and her parents brought a negligence action against the City of Sioux Falls (the City) for issuing a building permit for the project. The City moved to dismiss, arguing that the public duty rule barred the suit and that the Fodnesses failed to plead sufficient facts to establish that the City owed them a special duty, which would bring them within an exception to the rule. The circuit court granted the City's motion to dismiss and denied the Fodnesses' motion to amend their complaint. The Fodnesses appeal. We affirm.

**Facts and Procedural History**

[¶2.]     In April 2016, the City and Hultgren Construction LLC (Hultgren) began discussions about renovating the two buildings in downtown Sioux Falls located at and adjacent to 136 South Phillips Avenue (the Property). Hultgren intended to remove portions of the load-bearing wall separating the interior of the two buildings to create a single, open area for commercial development. Emily and her parents, Christine and Michael (the Fodnesses), lived in an upstairs apartment in one of the buildings. Hultgren applied to the City for a building permit for interior demolition but did not include with its permit application any architectural or structural plans for its proposed work. The City issued the building permit, and Hultgren posted the permit outside the Property and began demolition work at the site.

[¶3.]    On December 2, 2016, Hultgren demolished certain portions of a load-bearing wall separating the two adjoining buildings. Michael was on the ground level when he ran out after feeling the building shift. He escaped before the building collapsed. Christine was not at home, but Emily was asleep in her room upstairs when the apartment collapsed. Emily dropped to the story below and became trapped by the rubble that fell from the walls and ceilings above her. Fortunately, Emily found her cellphone and communicated with family and first responders who rushed to her aid. Emily remained trapped for approximately four hours before rescuers were able to remove her from the debris and transport her to the hospital for emergency treatment for her injuries.

[¶4.]    Emily, Christine, and Michael brought an action against the City, alleging one count of negligence and seeking compensation for their physical and emotional injuries. In their complaint, the Fodnesses alleged that the City was negligent in issuing Hultgren a building permit for interior demolition without adequate architectural or structural plans, particularly in light of its alleged knowledge of Hultgren's violation of the conditions of past permits. According to the Fodnesses, the City was familiar with Hultgren's practices because the City had previously issued approximately 33 building permits to Hultgren from February 2013 to September 2016. They alleged the City received numerous complaints from citizens and businesses that Hultgren was failing to comply with, and working beyond, the scope of its building permits.

[¶5.]    While the Fodnesses did not use the phrase "public duty" in their complaint, they did allege that the City breached "special duties" to them, that they

relied on the City's actions, and that the City's actions increased their risk of harm. They contended that the City was uniquely aware of the particular dangers and risks the Fodnesses would be exposed to when the City issued the permit. The Fodnesses alleged that they would not have continued to reside at the Property during the Hultgren construction project had the City notified them of the dangers the City knew existed. Thus, the Fodnesses claimed the City breached its special duty to them by exposing their family to known, dangerous, and life-threatening conditions that would not have occurred except for the City's acts and omissions.

[¶6.]     The City moved to dismiss for failure to state a claim under SDCL 15-6-12(b)(5). The City argued that it owed no duty to the Fodnesses under the public duty rule and could not be subject to liability for negligently issuing a building permit. Moreover, the City argued that the Fodnesses failed to establish that the City owed them a special duty to bring them within the exception to the public duty rule because they could not satisfy any of the factors set forth in our holding in *Tipton v. Town of Tabor* (*Tipton I*), 538 N.W.2d 783 (S.D. 1995).

[¶7.]     In response, the Fodnesses filed a brief in opposition to the motion to dismiss and moved to amend their complaint. The circuit court held oral argument on the motions and took the matter under advisement. The court issued a written opinion granting the City's motion to dismiss because the complaint failed to allege sufficient facts to establish that the City owed the Fodnesses a special duty of care. The court also denied the Fodnesses' motion to amend because they failed to show how an amendment would cure the defects in their original complaint. The circuit court entered an order of dismissal on March 19, 2019.

[¶8.] The Fodnesses appeal raising two issues for review, which we restate as follows:

> 1. Whether the circuit court erred in dismissing the Fodnesses' complaint under SDCL 15-6-12(b)(5).
>
> 2. Whether the circuit court abused its discretion in denying the motion for leave to amend the complaint.

## Analysis

> *1. Whether the circuit court erred in dismissing the Fodnesses' complaint under SDCL 15-6-12(b)(5).*

[¶9.] "An appeal of a motion to dismiss presents a question of law and our standard of review is de novo, with no deference given to the trial court's legal conclusions." *Id.* ¶ 4, 659 N.W.2d at 22. A motion to dismiss "is viewed with disfavor and is rarely granted." *Guthmiller v. Deloitte & Touche, LLP*, 2005 S.D. 77, ¶ 4, 699 N.W.2d 493, 496. South Dakota still adheres to the rules of notice pleading, and therefore, a complaint need only contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Gruhlke v. Sioux Empire Fed. Credit Union, Inc.*, 2008 S.D. 89, ¶ 17, 756 N.W.2d 399, 409 (quoting SDCL 15-6-8(a)(1)).

[¶10.] "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* ¶ 17 n.14, 756 N.W.2d at 409 n.14. Whether the complaint states a valid claim for relief is viewed "in the light most favorable to the plaintiff" and examined "to determine if the allegations provide for relief on any possible theory." *Osloond v. Farrier*, 2003 S.D. 28, ¶ 4, 659 N.W.2d 20, 22.

[¶11.] The Fodnesses' complaint alleges a single count of negligence against the City of Sioux Falls for issuance of the building permit. A cause of action for negligence "against a public entity . . . requires [proof of] the existence of a duty, a breach of that duty, and causation." *Maher v. City of Box Elder*, 2019 S.D. 15, ¶ 8, 925 N.W.2d 482, 485 (citing *Tipton v. Town of Tabor* (*Tipton II*), 1997 S.D. 96, ¶ 12, 567 N.W.2d 351, 357). "Before liability may be imposed on the theory of negligence there must be a duty on the part of the defendant to protect a plaintiff from injury." *Kuehl v. Horner (J.W.) Lumber Co.*, 2004 S.D. 48, ¶ 10, 678 N.W.2d 809, 812. This duty depends on "whether a relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff." *Zerfas v. AMCO Ins. Co.*, 2015 S.D. 99, ¶ 10, 873 N.W.2d 65, 69. "Under the public duty doctrine government entities are generally determined to owe governmental duties only to the public, not individuals." *McDowell*, 2018 S.D. 1, ¶ 36, 906 N.W.2d at 409 (citing *Tipton II*, 1997 S.D. 96, ¶ 10, 567 N.W.2d at 356). "Because such duties exist only for the protection of the public, they cannot be the basis for liability to a particular class of persons." *Id.*

[¶12.] The Fodnesses allege the City violated its public duty by failing to follow its own building code, and although they failed to cite any provision of the code in their complaint, the applicable provisions were identified for the circuit court during the motions hearing. The City's building code adopted the International Building Code 2015 edition, which was in effect when the City issued the permit to Hultgren. *See* Sioux Falls Building Code § 150.017 (2015) (setting forth applicable portions of the 2015 international building code).

Section 107.1 provides:

> Submittal documents consisting of one complete set of hard copy plans . . . with other *construction documents*, statement of *special inspections*, geotechnical reports and other data shall be submitted with each *permit* application. The *construction documents* shall be prepared by a *registered design professional* where required by the statutes of the jurisdiction in which the project is to be constructed. Where special conditions exist, the *building official* is authorized to require additional *construction documents* to be prepared by a *registered design professional*.

(Emphasis in original.)[1] The building code further provides that:

> No person shall demolish or wreck a building or structure without first obtaining a razing permit . . . . Construction documents and a schedule for demolition shall be submitted *where required by the building official*. Where such information is required, no work shall be done until such construction documents or schedule, or both, are approved.

Sioux Falls Building Code § 3303.1 (emphasis added).

[¶13.] On several occasions, we have held that a city's decision to issue building permits and conduct building inspections implicates a duty to the public rather than to an individual member of the public. In *Hagen v. City of Sioux Falls*, we explained that this is because "[b]uilding codes, the issuance of building permits, and building inspections . . . are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes." 464 N.W.2d 396, 398

---

1. There is an exception that authorizes: "The *building official* . . . to waive the submission of *construction documents* and other data not required to be prepared by a *registered design professional* if it is found that the nature of the work applied for is such that review of *construction documents* is not necessary to obtain compliance with this code." Sioux Falls Building Code § 107.1 (emphasis in original).

(S.D. 1990) (quoting 7 McQuillin Municipal Corporations § 24:507 (3 ed.))[2]  We recently affirmed this holding in *McDowell*, 2018 S.D. 1, ¶ 39, 906 N.W.2d at 410 ("We adhere to *Hagen's* conclusion that building codes do not create a duty of care that will support a negligence claim.").

[¶14.]        In *McDowell*, we cited with approval the Washington Supreme Court's observation that "[t]he primary purpose of building permits . . . is to secure to local government consistent compliance with construction, zoning and land use ordinances." *Id.* ¶ 39, 906 N.W.2d at 410.  As such, simply "[b]y issuing a permit, municipalities do not 'imply that the plans submitted are in compliance with all'" established building standards.  *Id.*  We reasoned that "[l]ocal governments should not, for the particular benefit of individual persons, bear the burden of ensuring that every single building constructed within its jurisdiction fully complies with applicable codes." *Id.*  "The duty to ensure compliance rests with the individuals responsible for construction." *Id.*  "Permit applicants, builders and developers are in a better position to prevent harm to a foreseeable plaintiff than are local governments." *Id.*  Likewise, the City's decision to issue a building permit to Hultgren did not create any public duty to the Fodnesses.

[¶15.]        However, there is an exception to the public duty rule that will give rise to liability if there exists some "special duty" owed to an individual.  *Maher*, 2019 S.D. 15, ¶ 9, 925 N.W.2d at 485 (citing *Tipton II*, 1997 S.D. 96, ¶ 13, 567

---

2.    Although *Tipton I* rejected *Hagen's* bright-line test, instead adopting a four-part test from *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 806-07 (Minn. 1979), *Tipton I* did not reverse *Hagen's* conclusions with respect to building codes.  *See McDowell*, 2018 S.D. 1, ¶ 39, 906 N.W.2d at 10.

N.W.2d at 358). This well-established exception to the rule "arises only when there are additional indicia that the municipality has undertaken the responsibility of not only protecting itself, but also undertaken the responsibility of protecting a particular class of persons[.]" *Tipton I*, 538 N.W.2d at 786. Additionally, this exception to the public duty rule may also apply "when a public entity acts on behalf of a particular person actively causing injury" because the entity has "by its conduct already made a policy decision to deploy its resources to protect such individual." *Tipton II*, 1997 S.D. 96, ¶ 13, 567 N.W.2d at 358. This special duty arises from general principles of tort law governing the delivery of service to others, providing "that persons are generally not liable for failure to act, but once having acted, must proceed without negligence." *Id.*

[¶16.] In *Tipton I*, we adopted a four-part test to determine whether a governmental entity owed a particular individual or class of individuals a special duty. 538 N.W.2d at 787. The four factors include:

> (1) the state's actual knowledge of the dangerous condition;
>
> (2) reasonable reliance by persons on the state's representations and conduct;
>
> (3) an ordinance or statute that sets forth mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole; and
>
> (4) failure by the state to use due care to avoid increasing the risk of harm.

*Id.* Evidence of "[a]ny combination of these factors may be sufficient" to prove the governmental entity owed a special duty. *Id.* Accordingly, we apply these factors to the Fodnesses' claim that a special duty was created by the City's issuance of the permit here.

*Actual Knowledge*

[¶17.]	The Fodnesses claim the City knew that by issuing Hultgren a permit for interior demolition, the risk of injury or death to the Fodnesses would increase because the City was aware Hultgren had not complied with the requirements of building permits in the past. Although we must accept the Fodnesses' description of the events as true, the Fodnesses must allege that the City had actual knowledge that Hultgren intended to demolish a load-bearing wall without adequate safeguards.

[¶18.]	"'Actual knowledge' means knowledge of 'a violation of law constituting a dangerous condition.'" *Tipton II*, 1997 S.D. 96, ¶ 17, 567 N.W.2d at 358. "Constructive knowledge is insufficient: a public entity must be uniquely aware of the danger or risk to which a plaintiff is exposed." *Id.*[3] Actual knowledge is more than a "simple failure to perceive a violation"; "[i]t means knowing inaction could lead to harm." *Id.* "Although actual knowledge may be shown by both direct and circumstantial evidence, it may not be established through speculation." *Id.* ¶ 18, 567 N.W.2d at 359. Because "actual knowledge denotes a foreseeable plaintiff with a foreseeable injury," an inference of actual knowledge will be permitted only when the defendant "*must* have known" harm would occur rather than "*should* have known." *Tipton II*, 1997 S.D. 96, ¶ 18, 567 N.W.2d at 359 (emphasis added).

---

3.	Black's Law Dictionary defines constructive knowledge as: "[k]nowledge that one using reasonable care or diligence *should* have, and therefore that is attributed by law to a given person." Knowledge, *Black's Law Dictionary*, (11th ed. 2019) (emphasis added).

[¶19.]     Our analysis of this factor in *Tipton II*, where we held that plaintiffs could not meet this high burden of proving actual knowledge, is instructive. 1997 S.D. 96, 567 N.W.2d 351. In that case, privately owned wolf hybrids attacked the Tiptons' daughter. The Tiptons filed suit against the Town of Tabor, alleging negligence for allowing the hybrids to remain in town, licensing the hybrids, and for failing to abate the nuisance the hybrids presented. They alleged Tabor had actual knowledge that the hybrids were dangerous because the police investigated complaints of howling and the officers saw the large cage that fenced in the hybrids. Tabor also issued licenses for the hybrids, which listed the animals as wolves.

[¶20.]     The *Tipton II* Court held that evidence that the hybrids were caged by a large fence and were bred with wolves was not enough to prove actual knowledge of a dangerous condition. *Id.* ¶ 22, 567 N.W.2d at 360. Rather, the Court concluded these were "warning flags" of the hybrid's dangerous proclivities but did not constitute actual knowledge. *Id.* Additionally, it found that even if the Tiptons could prove actual knowledge, "this element must be coupled with another of the four factors" because the special duty exception will generally not apply based solely upon actual knowledge. *Id.* ¶ 29, 567 N.W.2d at 364. Thus, we determined that the Tiptons were unable to prove that the town owed them a special duty. *Id.* ¶ 41, 567 N.W.2d at 367.

[¶21.]     Similarly, in the present case, the circuit court held that even if the City was aware of Hultgren's past violations on other projects, the Fodnesses' claim nevertheless must fail. This was because they did not allege that the City had actual knowledge of a dangerous condition on the premises because of Hultgren's

failure to conform to a particular professional standard. Nor did the Fodnesses plead that the City had actual knowledge that Hultgren was acting outside the scope of its permit during the demolition of the building. The City's knowledge of prior complaints about Hultgren's compliance with other building permits amounts to no more than warning signs, i.e. constructive knowledge. At best, this could only support an argument that the City "should have known" that Hultgren's conduct could lead to harm.

[¶22.] Still, the Fodnesses urge us to permit discovery and consider a factual record of complaints the City received regarding Hultgren before resolving the question of the City's actual knowledge of a dangerous condition on the Property. While resolution of a special duty question may often require a more fully developed record, here the complaint is insufficient as a matter of law to show the City assumed a duty under the special duty exception to the public duty rule. Even if we assume that the complaints about Hultgren were sufficient to prove that the City had actual knowledge of a dangerous condition on the Property, the Fodnesses are unable to satisfy the other *Tipton I* factors. As we stated in *Tipton II*, "we are unaware of any 'public duty' jurisdiction which pins special duty liability solely upon actual knowledge." 1997 S.D. 96, ¶ 28, 567 N.W.2d at 364. Therefore, "[o]nly when actual knowledge is coupled with one or more of the other factors, can we uphold both the spirit and substance of the private duty exception." *Id.*

*Reasonable Reliance*

[¶23.] The Fodnesses claim that the building permit issued by the City to Hultgren, which was posted on the Property, was a representation by the City to

the occupants of the Property that the work performed in the building would be done within the standard of care for building construction. During oral argument before this Court, the Fodnesses alleged that the posted permit was a public notice that Hultgren had passed the permitting process and represented the standard of care for such work. The Fodnesses assert that they reasonably relied upon the permit to their detriment. However, "reasonable reliance must be based on specific actions or representations which cause the persons to forgo other alternatives of protecting themselves." *Andrade v. Ellefson*, 391 N.W.2d 836, 841 (Minn. 1986); *accord Tipton II*, 1997 S.D. 96, ¶ 31, 567 N.W.2d at 364. "Reliance must be based on personal assurances" or promises made by the City. *Tipton II*, ¶ 32, 567 N.W.2d at 365.

[¶24.] We also addressed this factor in *Tipton II,* wherein plaintiffs argued that they believed the wolf hybrids were safe, relying on Tabor's decision to issue a license to the animal's owners. *Id.* ¶ 31, 567 N.W.2d at 365. We held that "licensing [is] insufficient for reliance" because there is no personal assurance or direct promise. *Id.* ¶¶ 31-32, 567 N.W.2d at 365. Likewise, as discussed in *Hagen* and *McDowell*, the issuance of a building permit does not represent that the plans and structures are in compliance with all applicable building codes and does not create a duty of care that will support a negligence claim. *Hagen*, 464 N.W.2d at 398-400; *McDowell*, 2018 S.D. 1, ¶ 39, 906 N.W.2d at 410. Moreover, even if a building permit could be construed as a general representation by the City that the work to be performed would be in compliance with the City's Building Code, it does not equate to a *personal* assurance to the Fodnesses that caused them to forgo other

options to protect themselves. In the absence of personal assurances or promises made by the City, the Fodnesses have failed to plead sufficient facts to support a finding of reasonable reliance.

*Ordinance Mandating a Special Duty of Care*

[¶25.]     Although the Fodnesses cite the Sioux Falls Building Code to support their argument that the City violated a public duty, they have failed to designate—either in their complaint or on appeal—any ordinance or statute that mandates a special duty of care. To prove this factor, the Fodnesses must identify "language in a statute or ordinance which shows an intent to protect a particular and circumscribed class of persons." *Tipton II*, 1997 S.D. 96, ¶ 35, 567 N.W.2d at 365. As no such statute or ordinance was pled, the Fodnesses cannot establish the third factor of the *Tipton* test.

*Failure to Avoid Increasing the Risk of Harm*

[¶26.]     The Fodnesses claim that the City's issuance of a building permit to Hultgren, for a structure where the Fodnesses were known to reside, substantially increased the risk of injury or death to them. They further allege that the City was aware of past instances where Hultgren violated building permits and codes. Accepting as true the facts pled in the complaint, the Fodnesses must still allege an official action that "cause[d] harm itself or expose[d] plaintiffs to new or greater risks, leaving them in [a] worse position than they were before [the] official action." *Id.* ¶ 38, 567 N.W.2d at 366.

[¶27.]     Proof of the government's "[f]ailure to diminish harm is not enough." *Id.* ¶ 38, 567 N.W.2d at 366-67. There must be proof of an affirmative action by the

governmental entity that "contributed to, increased, or changed the risk which would have otherwise existed." *Gleason v. Peters*, 1997 S.D. 102, ¶ 25, 568 N.W.2d 482, 487 (holding that law enforcement's failure to eliminate the potential danger of assault did not expose the plaintiff to greater risk than that which the public was exposed). *See also Tipton II*, 1997 S.D. 96, ¶ 39, 567 N.W.2d at 367 (concluding that neither the licensing of wolf hybrids nor the inspection of their cage was an affirmative action that increased harm); *Von Batsch v. Am. Dist. Telegraph Co.*, 222 Cal. Rptr. 239, 246-47 (1985) (holding that a police officer's failure to eliminate the danger of unknown intruders was not an affirmative action that contributed to, increased, or changed the risk).

[¶28.]     Here, other than the issuance of a building permit, the Fodnesses did not establish an affirmative action by the City that contributed to or increased the Fodnesses' risk of harm. Although the Fodnesses argue that the permit was issued in violation of the City's Building Code because Hultgren failed to submit demolition plans, they cite an ordinance which does not appear to support this proposition. Instead, the ordinance regarding the issuance of *razing permits* states that construction documents shall be submitted "where required by the building official." Sioux Falls Building Code § 3303.1. As noted by the circuit court, the Fodnesses have not cited an ordinance *mandating* that structural or architectural plans be submitted and approved by the City before demolition work can be done. Moreover, the Fodnesses have not pled any facts to support a finding that the City had actual knowledge that Hultgren was proceeding in an unsafe fashion. In any event, the Fodnesses' argument is centered upon the City's failure to require

demolition plans, and we have rejected the notion that a *failure* to act is the equivalent of an *affirmative* action giving rise to liability under the special duty doctrine. *See Tipton II*, 1997 S.D. 96, ¶ 38, 567 N.W.2d at 366.

[¶29.] As we held in *Tipton I*, proof of all four factors is not required to prove the existence of a special duty; rather any combination of the factors may be sufficient. 538 N.W.2d at 787. *See Andrade*, 391 N.W.2d at 843 (finding a special duty with only the first factor partially met and the third factor conclusively established). Nevertheless, the Fodnesses failed to allege facts from which any of the four *Tipton I* factors could be met. As such, the circuit court properly dismissed their complaint under SDCL 15-6-12(b)(5).

> 2. *Whether the circuit court abused its discretion in denying the motion for leave to amend the complaint.*

[¶30.] Motions for leave to amend should be granted freely when justice so requires. *Prairie Lakes Health Care Sys., Inc. v. Wookey*, 1998 S.D. 99, ¶ 28, 583 N.W.2d 405, 417. However, the circuit court may deny leave to amend when "there are compelling reasons such as . . . futility of the amendment." *In re Wintersteen Revocable Tr. Agreement*, 2018 S.D. 12, ¶ 11, 907 N.W.2d 785, 789.

[¶31.] Here, the Fodnesses filed a motion for leave to amend, but did not attach a proposed amended complaint or include proffered language in their motion. In their brief in support of their request, the Fodnesses admitted that the motion to amend was a "belt and suspenders motion" used as a precautionary measure in the event the circuit court felt the complaint was "missing certain technical language that could be added with a simple amendment." During the motion hearing, the Fodnesses told the court that their motion was designed to give them leeway to

correct their complaint if the circuit court saw any type of "magic language missing." Yet, the Fodnesses did not identify what additional facts, if any, they would plead if allowed to amend their complaint. Instead, they relied on their existing allegations. Therefore, the circuit court, based on the pleadings and arguments submitted, denied the motion, finding that amending the complaint merely to insert "technical language" would not remedy the shortcomings or otherwise change the outcome of the court's analysis.

[¶32.] "The circuit court's denial of a party's request to amend the pleadings is reviewed under an abuse of discretion standard." *Zhang v. Rasmus*, 2019 S.D. 46, ¶ 33, 932 N.W.2d 153, 163. "An abuse of discretion is a fundamental error of judgment, a choice outside the reasonable range of permissible choices, a decision, which, on full consideration is arbitrary or unreasonable." *Id.* Based on our review of the pleadings and the record, the circuit court did not abuse its discretion in denying the Fodnesses' motion for leave to amend.

## Conclusion

[¶33.] We have previously held that issuance of a building permit does not create a duty to a private individual which will support a negligence claim. Still, the City could owe a duty under the special duty exception to the public duty rule had the Fodnesses established a combination of the factors set forth in *Tipton I*. Because their complaint failed to plead facts sufficient to establish any of the required factors, the circuit court did not err by granting the City's motion to dismiss for failure to state a claim. Additionally, the circuit court did not abuse its

discretion in denying the motion to amend the complaint having determined such amendment would be futile.

[¶34.]    GILBERTSON, Chief Justice, and JENSEN and DEVANEY, Justices, and MEANS, Circuit Court Judge, concur.

[¶35.]    MEANS, Circuit Court Judge, sitting for SALTER, Justice, disqualified.